WILKINSON, Collector of Internal Revenue, v. HAMILTON MFG. CO.

Circuit Court of Appeals, Seventh Circuit. March 6, 1928.

No. 3927.

1. Internal revenue ⊜⟶9(25)—Deductible loss in determining corporation's taxable income depends largely on particular circumstances (Excise Tax Act 1909, § 38, par. 2, cl. 2).

Whether there is a loss to be deducted in arriving at corporation's taxable income, under Excise Tax Act 1909, § 38, par. 2. cl. 2 (36 Stat. 113), depends largely on the circumstances of the particular case.

2. Internal revenue ⊜⟶9(25)—Sale of property is only one way of ascertaining loss deductible in determining taxable income (Excise Tax Act 1909, § 38, par. 2, cl. 2.

Sale of property is only one way of ascertaining loss, deductible in ascertaining taxable income, under Excise Tax Act 1909, § 38, par. 2, cl. 2 (36 Stat. 113), providing for deduction of losses not compensated by insurance or otherwise, including "reasonable allowance for depreciation of property."

3. Internal revenue ⊜⟶9(25) — Transaction whereby actual loss was deducted in return for 1910 will not be reopened to fix income tax under statute passed in 1919 (Excise Tax Act 1909, § 38, par. 2, cl. 2; Income Tax Act 1918).

Transaction whereby actual loss openly and fairly arrived at and accepted by government, was deducted in corporation's return for 1910, under Excise Tax Act 1909, § 38, par. 2, cl. 2 (36 Stat. 113), will not be reopened for purpose of fixing tax, under Income Tax Act of 1918 (40 Stat. 1057), which was not passed until February, 1919.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Action by the Hamilton Manufacturing Company against A. H. Wilkinson, Collector of Internal Revenue. Judgment for plaintiff (19 F.[2d] 365), and defendant brings error. Affirmed.

Fred'k W. Dewart, of Washington, D. C., for plaintiff in error.

Edwin S. Mack, of Milwaukee, Wis., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. After plaintiff had paid its income tax for 1918 in accordance with its return, there was assessed against it, and paid under protest, an additional tax of $19,019.39. Plaintiff (defendant in error) sued defendant (plaintiff in error), the revenue collector in Wisconsin, and the court, after jury waived in writing, heard the evidence and gave judgment for the additional assessment and interest.

In 1909, plaintiff acquired certain property, upon which it admittedly sustained a loss, that was ascertained without a sale, $60,000 of which was written off in 1910, and a deduction of that sum was made from its return for that year under the Excise Tax Act of 1909 (36 Stat. 11). In 1912, the property was sold at a sum of $76,968.48 less than the plaintiff had paid therefor in 1909, and a loss of $16,968.48 more than was deducted in 1910.

The controversy arises over the fact that, in arriving at the prewar profits for the years 1911, 1912, and 1913, as provided in the 1918 act, the Commissioner treated the $60,000 deduction of 1910 as though it had never been made; the sole reason therefor being that it had not been arrived at by a sale of the property, and he therefore deducted the whole $76,968.48 as of the time of the sale in 1912. The character of the loss here shown is so different from the losses shown or claimed in the cases cited and relied on by the government that we think those cases are not controlling here.

The evidence in this case consists of a stipulation and the testimony of one witness called by plaintiff. Plaintiff's business was commenced some years before it was incorporated in 1889. From the time of its incorporation it made a practice of revaluing its assets at the end of each year. In 1904, the Tubbs Manufacturing Company was incorporated by persons, several of whom were former employés of plaintiff. The Tubbs Company almost immediately commenced the use of plaintiff's trade-names, designs, etc., and the infringement of its patents, because of which plaintiff brought two suits against the Tubbs Company, one for infringement, and one for unfair competition. That litigation was continued through several years, and it was very expensive, and caused both parties heavy loss. It resulted in a decree in the District Court in favor of the Tubbs Company in the unfair competition suit, and in favor of plaintiff in the patent suit. In 1909, while both cases were pending on appeal, a settlement was made, substantially on terms dictated by the Tubbs Company, whereby plaintiff acquired the Tubbs Company factory, equipment, manufactured goods, and raw materials, and that company went out of business. The factory was taken at the book value, and the other property at an appraised value; the two aggregating $126,900. To that was added 30 per cent. thereof, or $38,070. The purpose of the settlement and the reason so large a price was paid is stated in the stipulation, viz:

"6. For the sake of terminating the litigation, and assuring itself against possible heavy losses in the future, in case the litigation turned out unfavorably, the plaintiff paid for the property of the Tubbs Company a price in excess of its value, although the price so paid was not enough to enable the stockholders of the Tubbs Company to get back the full amount of their investment. These stockholders also took some loss as a condition of terminating the litigation.

"7. Inventory value of the property of the Tubbs Company (hereinafter called the 'Tubbs property'), at the date of settlement above described, was $126,900. This amount in fact was, and was recognized by the plaintiff to be, in excess of the actual value of the property; but the plaintiff paid that amount, plus 30 per cent., or $38,070 additional, because the plaintiff believed that it was worth this excess, plus the $38,070, to it to get rid of dangerous litigation, involving the validity of its patents and the imitation of its goods, catalogues, and designs."

The evidence shows that when the price to be paid for the settlement was fixed plaintiff had no very definite knowledge of the value of the property to be included in the transfer. Through the operation of the Tubbs plant from July 1, 1909, when it was taken over, plaintiff became convinced that the property was not worth the amount of the inventories, and that at the revaluation of its assets in 1910 it must take a substantial loss in addition to the $38,070, which was paid over and above the inventories. The stipulation continues:

"Therefore, in closing its books for 1910, plaintiff charged off as a loss or depreciation, on account of the Tubbs property purchased the preceding year, the total sum of $60,000, which was inclusive of the sum of $38,070 paid in excess of inventory values and for the purpose of terminating litigation. This $60,000 so written off by the plaintiff was deducted from its income of 1910, and the fact that this was not excessive was demonstrated by the fact that plaintiff had to write off an additional loss of $16,968.48 a year or two later, after final

sale of the property had demonstrated true market value.

"11. All entries in the books of the corporation exhibiting the loss or depreciation of $60,000, on account of the Tubbs property, were lawfully made at the close of the year 1910, after the amount of such loss or depreciation had been determined by plaintiff, and in the regular course of business, and for the purpose of making formal record of the fact that plaintiff had revalued the Tubbs property, and had found that its market value was $60,000 less than the amount the plaintiff had paid for the same the preceding year." * * *

"13. During the years 1909, 1910, 1911, and 1912 the plaintiff made its annual revaluation of assets on the basis of the fair market value of such assets as at the close of each of said years.

"14. No objection to the entry of said loss of $60,000 in 1910, nor to the deduction of said amount from plaintiff's 1910 income, was made by any officer or agent of the United States until about the end of the year 1919."

The court made the following findings of fact:

"(1) The court finds that in 1909, when the so-called Tubbs property was acquired, and the plaintiff consummated the agreement with the Tubbs Company, the plaintiff then, and certainly in 1910, justifiably felt that it had sustained a loss, and it attempted and in good faith did value what it had received upon the transaction thereby to assess its loss, or at least a part of it, theretofore in fact sustained.

"(2) The court finds that at the time of the acquisition of the Tubbs property the book value thereof was far in excess of any fair or market value thereof, and the 30 per cent. additional paid therefor, which 30 per cent. additional amounted to $38,070, was a disbursement made for the purpose of ending litigation and terminating an annoying business situation, and was a payment made as 'the price of peace.'

"(3) The court finds that the payment of $38,070, constituting the item of 30 per cent. in addition to the book value, paid by the plaintiff, in the Tubbs transaction, brought in no property having any value.

"(4) The court finds that the item of $60,000 loss on the Tubbs transaction or purchase account, which the plaintiff charged off in 1910, was a loss actually sustained by the plaintiff prior to the year 1911.

"(5) The court finds that the good will and intangible assets of the Tubbs property, to the extent that there was any good will or there were any such intangible assets, were never sold or disposd of by the plaintiff, and that to the extent, if any, that the $38,070 (being the 30 per cent. addition to the book value of said property) paid, represented good will or intangible assets, the same covers an item still retained by the plaintiff, on which no loss has been sustained by the plaintiff, other than the loss at the time of acquisition thereof in 1909, as indicated in findings (2) and (3) above.

"(6) The court finds that upon the stipulation and undisputed evidence the plaintiff is entitled to judgment against the defendant in the sum of $19,019.39, together with interest thereon at the rate of 6 per cent. per annum from September 20, 1922."

Upon those findings, the court entered judgment for plaintiff.

The defendant requested the following finding:

"The loss sustained by the plaintiff on the property purchased from the Tubbs Company was not a realized loss until the property was sold in 1912."

The court refused to make that finding, and defendant's motion for a judgment was denied.

The agreed facts show: That, when plaintiff wrote off the $60,000 in 1910, it followed the practice theretofore followed for 40 years, and continued during the years 1911 and 1912; that the loss was actually greater than the amount written off; that the annual revaluations were in accordance with good and sound accountancy practices. The stipulation recites: "All entries in the books of the corporation exhibiting the loss or depreciation of $60,000 on account of the Tubbs property were lawfully made at the close of the year 1910." The agreed facts also show that the taking of the property was not the main purpose of the transaction, but was really an incident in the settlement of long-continued, dangerous, and expensive litigation, wherein plaintiff, knowing it to be excessive, paid the $126,900 for the inventories, plus the 30 per cent., or $38,070, additional, "because the plaintiff believed it was worth this excess plus the $38,070 to get rid of dangerous litigation, involving the validity of its patents and the imitation of its goods, catalogues and designs (paragraph 7, supra)."

The government accepted the return and the tax paid thereunder for 1910, and made no objection or complaint for more than nine years. Plaintiff's assertion in the brief, "We will show that the going business or

good will • • • was a valuable proper-ty," was not supported by the evidence, and is contrary to the court's third finding of fact.

In levying the additional tax in question, the Commissioner was not seeking to correct a return made in 1910, nor to correct any return, or anything done by plaintiff under the 1909 Excise Tax Act (36 Stat. 11), but was merely rejecting what was there done in order to increase a tax to be paid by plain-tiff under the act of 1918 (40 Stat. 1057) which was not passed until February, 1919, nine years after what was done in 1910 had become a closed transaction.

[1, 2] Whether there is a deductible loss in any case must depend largely upon the cir-cumstances of that case. From the discus-sion by the Supreme Court of a provision in the Income Tax Act of 1918 (40 Stat. 1077, § 234, subd. 4; Comp. St. § 6336⅛pp) that is identical with the provision of the 1909 Excise Tax Act here under consideration, it is apparent that a sale is only one of the ways of ascertaining a loss under that pro-vision. U. S. v. White Dental Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120. The second paragraph of section 38 of the Excise Tax Law of 1909 provides the meth-od of determining the net income upon which the tax is to be fixed. There are several clauses providing for the deductions that may be made, and the second one is:

"All losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any, etc." 36 Stat. p. 113.

We can see no reason why a method for arriving at the losses deductible under the first part of this clause should be different from that to be used in arriving at the de-ductions allowable under the second part. Obviously, a "reasonable allowance for de-preciation of property" usually is not, and generally could not be, arrived at by a sale of property.

[3] It is unnecessary to decide whether the deduction of $60,000 was, at the time it was made, technically accurate. We do deter-mine that the loss was openly and fairly ar-rived at, and accepted by the government. It represented an actual loss. In our opin-ion it would be inequitable and unjust to permit the transaction to be reopened for the purpose of fixing a tax under an act that did not come into existence until nine years later.

The judgment should be and it is hereby affirmed.